UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -:
MORTGAGE RESOLUTION SERVICING, LLC, : 15 Civ. 0293 (LTS)(JCF)
1ST FIDELITY LOAN SERVICING, LLC,   : 17 MC 0166 (LTS)(JCF)
and S&A CAPITAL PARTNERS, INC.,     :
                                    :      MEMORANDUM
            Plaintiffs,             :      AND  ORDER
                                    :
     - against -                    :
                                    :
JPMORGAN CHASE BANK, N.A., CHASE    :
HOME FINANCE LLC, and JPMORGAN      :
CHASE & CO.,                        :
                                    :
            Defendants.             :
- - - - - - - - - - - - - - - - - -:

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/6/17

This action arises from the sale by the defendants of thousands of residential mortgages to the plaintiffs. The plaintiffs have filed a motion to compel compliance with their subpoena to depose a third-party witness, Erika Lance, who refused to answer certain questions on the basis that they called for the disclosure of trade secrets.[1] The motion is granted in part and

---

[1] The motion was originally filed in the United States District Court for the Middle District of Florida, where Ms. Lance is employed and the deposition was to take place. (Plaintiffs' Motion and Memorandum of Law to Compel Compliance with Subpoena of Third-Party Witness Erika Lance, for Sanctions, and to Transfer Motion to the Issuing Court ("Pl. Memo.") at 1, 3; Subpoena in a Civil Case, attached as Exh. B to Declaration of Glen Silverstein dated May 16, 2017). The motion was thereafter transferred to this Court and docketed under the case number 17 MC 166 as an ancillary proceeding to the main action. In this opinion, citations to any documents from the main action will include that case's number, 15 Civ. 293.

1

denied in part.

Background

As I noted in a recent decision, discovery in this action is currently limited to the plaintiffs' tort and breach of contract claims, which concern "(1) the alleged misrepresentations and omissions by the defendants about loans sold to the plaintiffs and (2) the defendants' practice of retaining payments made on the loans, forgiving loans, or releasing liens on loans sold to the plaintiffs." Mortgage Resolution Servicing, LLC v. JPMorgan Chase Bank, N.A., No. 15 Civ. 293, 2017 WL 2305398, at *1 (S.D.N.Y. May 18, 2017) (quoting Mortgage Resolution Servicing, LLC v. JPMorgan Chase Bank, N.A. ("Mortgage Resolution II"), No. 15 Civ. 293, 2016 WL 3906712, at *2 (S.D.N.Y. July 14, 2016)). Information relevant to other claims, such as the plaintiffs' (now dismissed) claim under the Racketeer Influenced Corrupt Organizations Act ("RICO"), is not subject to discovery. See id.; see also Mortgage Resolution Servicing, LLC v. JP Morgan Chase Bank, N.A., No. 15 Civ. 293, 2017 WL 570929, at *4-5 (S.D.N.Y. Feb. 13, 2017) (dismissing civil RICO claim).[2]

---

[2] The plaintiffs have filed a motion for leave to file a Fourth Amended Complaint and amended RICO statement. (Notice of Plaintiffs' Motion for Leave to Amend and Supplement Complaint and RICO Case Statement Under F.R.C.P. 15 dated March 6, 2017, in 15 Civ. 293). However, discovery is not available for "likely, anticipated, or potential claims or defenses." Lifeguard Licensing

2

Ms. Lance is an employee of Nationwide Title Clearing, Inc. ("NTC"), a non-party that allegedly prepared and filed on behalf of the defendants lien releases for mortgages actually owned by the plaintiffs. (Pl. Memo. at 3-5). These included releases prepared in connection with the "DOJ Lien Release Process" (also known as the "Pre-DOJ Lien Release Project"), a program the defendants established to "excise from their books loans that would otherwise require compliance with anti-blight programs." (Pl. Memo. at 5-6); Mortgage Resolution II, 2016 WL 3906712, at *1. Documents produced pursuant to subpoena revealed that Ms. Lance prepared many of the allegedly "fraudulent lien releases and subsequent Vacations of Modifications of Mortgages" that injured the plaintiffs. (Pl. Memo. at 7).

In February 2017, the plaintiffs served Ms. Lance with a subpoena in her individual capacity, rather than as a witness on behalf of the company pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure. (Pl. Memo. at 7). Her deposition was eventually scheduled for March 21, 2017. (Pl. Memo. at 8). Ms. Lance (on the advice of counsel) refused to answer certain questions that would purportedly elicit NTC's proprietary information, such as questions about (1) NTC's clients or types of

---

Corp. v. Kozak, No. 15 Civ. 8459, 2016 WL 3144049, at *3 (S.D.N.Y. May 23, 2016) (internal quotation marks omitted).

clients, and (2) the types of systems Ms. Lance used to create certain documents on which her name appears and the manner of creating certain such documents. (Pl. Memo. at 9-12; Deposition of Erika Lance dated March 21, 2017, in 15 Civ. 293 ("Lance Dep.") at 10-11, 21).[3] When Ms. Lance asserted that she would refuse to answer similar questions, plaintiffs' counsel terminated the deposition. (Pl. Memo. at 12; Lance Dep. at 21-22).

Discussion

A. Governing Law

Ms. Lance asserts that Florida law applies to this privilege dispute, and the plaintiffs do not argue otherwise. (Non-Parties' Response to Plaintiffs' Motion to Compel Compliance with Subpoena of Third-Party Witness Erika Lance and for Sanctions ("Lance Memo.") at 11; Plaintiffs' Reply to Non-Parties' Response to Plaintiffs' Motion to Compel Compliance with Subpoena of Third-

---

[3] The transcript of Ms. Lance's deposition was designated "Confidential" and "Attorneys' Eyes Only" pursuant to the confidentiality order entered in the main action, and has been filed under seal in that action. (Protective Order dated Aug. 30, 2016, in 15 Civ. 293; Sealed Document filed April 14, 2017 in 15 Civ. 293 (ECF No. 164)); Mortgage Resolution Servicing, LLC v. JPMorgan Chase Bank, N.A. ("Mortgage Resolution IV"), No. 15 Civ. 293, 2017 WL 2172322, at *1 (S.D.N.Y. May 16, 2017). The plaintiffs have challenged those designations. Mortgage Resolution IV, 2017 WL 2172322, at *1. I note that the deposition transcript, along with other documents, may have been filed under seal in the Middle District of Florida; however, the Southern District of New York holds no documents under seal in this ancillary proceeding.

4

Party Witness Erika Lance and for Sanctions ("Reply") at 1, 5); Stephens v. American Home Assurance Co., No. 91 Civ. 2898, 1995 WL 230333, at *7 (S.D.N.Y. April 17, 1995) (employing New York choice-of-law rules in diversity case and applying law of jurisdiction where conduct subject to privilege occurred); but see Del Giudice v. Harlan, No. 15 Civ. 7330, 2016 WL 6875894, at *2 (S.D.N.Y. Nov. 21, 2016) ("Pursuant to Federal Rule of Evidence 501, 'in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.'").[4] I will not disturb the parties' (implicit) agreement here.

Florida's Uniform Trade Secrets Act defines a trade secret as

> information, including a formula, pattern, compilation, program, device, method, technique, or process that:
>
> (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

---

[4] It appears that piercing the privilege for trade secrets is particularly difficult under New York law, placing only a "minimal initial burden of demonstrating the existence of a trade secret" on the person resisting discovery and requiring the "party seeking disclosure of trade secrets [to] show that such information is 'indispensable to the ascertainment of truth and cannot be acquired in any other way.'" Ferolito v. Arizona Beverages USA, LLC, 119 A.D.3d 642, 643-44, 990 N.Y.S.2d 218, 220 (2d Dep't 2014) (quoting Carecore National, LLC v. New York State Association of Medical Imaging Providers, Inc., 24 A.D.3d 488, 489, 808 N.Y.S.2d 238, 239 (2d Dep't 2005)). However, Ms. Lance has argued for the application of Florida law -- discussed below -- which seems less protective of trade secrets than does New York law.

> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Fla. Stat. § 688.002(4). Florida's Evidence Code contains a privilege protecting trade secrets:

> A person has a privilege to refuse to disclose, and to prevent other persons from disclosing, a trade secret owned by that person if the allowance of the privilege will not conceal fraud or otherwise work injustice. When the court directs disclosure, it shall take the protective measures that the interests of the holder of the privilege, the interests of the parties, and the furtherance of justice require. The privilege may be claimed by the person or the person's agent or employee.

Fla. Stat. § 90.506. When this privilege is asserted, the person or entity resisting discovery has the burden to show that "the requested production constitutes a trade secret," Landsport Corp. v. Canaramp Corp., No. 3:05 CV 237, 2006 WL 4692567, at *2 (M.D. Fla. April 11, 2006) -- that is, "that the information sought is a trade secret or confidential business information and that disclosure may be harmful," American Express Travel Related Services, Inc. v. Cruz, 761 So.2d 1206, 1209 (Fla. Dist. Ct. App. 2000). If that burden is shouldered, the party seeking disclosure must "show reasonable necessity for the requested [information]." Landsport, 2006 WL 4692567, at *2. Ultimately, "[d]etermination of whether the need [for the information] outweighs the harm of disclosure falls within the sound discretion of the trial court." I.S.E.L., Inc. v. American Synthol, Inc., No. 3:08 CV 870, 2009 WL

3367237, at *2 (M.D. Fla. Oct. 15, 2009).

    B.   <u>Analysis</u>

        1.   <u>Trade Secret Privilege</u>

The briefing clarifies certain information that the plaintiffs seek to elicit from Ms. Lance. First, the plaintiffs insist they do not seek the identities of NTC's customers, but merely the "'types' of clients NTC has." (Reply at 3). Second, they assert that they seek information only about publicly available documents "located in recording jurisdictions nationwide" -- "forms" filled out by Ms. Lance and "the content of [those] forms" -- and do not inquire about specific areas that NTC's Chief Legal Officer, Myron Finley, has asserted are trade secrets (Affidavit of Myron Finley dated May 11, 2017 ("Finley Aff."), ¶¶ 2, 7-8; Reply at 4).

I am hampered here by the posture of this dispute. At Ms. Lance's deposition, counsel for the plaintiffs introduced two lines of questioning that prompted concerns about revealing trade secrets. Plaintiffs' counsel consequently terminated the deposition (which lasted approximately twenty minutes). The plaintiffs now argue that the specific questions asked were not intended to elicit confidential information, and that therefore Ms. Lance should be compelled to answer them. However, it is unlikely that, if Ms. Lance were ordered to appear for another deposition in Florida, the plaintiffs would be content with asking those two

7

questions. And because the deposition was so swiftly terminated, the record does not reveal what specific follow-up questions or other lines of questioning would provoke objectionable instructions not to answer. I am therefore left to guess at what those areas of inquiry might be. Cf. American Express Travel, 761 So.2d at 1209 (noting that determining whether information sought is trade secret "will usually require that the trial court conduct an in camera inspection of the materials in question").

I am hindered, too, by Ms. Lance's submissions, particularly Mr. Finley's affidavit, which provide little guidance as to what confidential information might be revealed in Ms. Lance's deposition. One of Mr. Finley's statements obscures extremely broad categories of information behind abstruse business jargon: "[T]hese proprietary business processes generally relate to the division of labor between individuals in the workflow for processing documents." (Finley Aff., ¶ 7). Another is clearer about its breadth, asserting privilege over "how the company uses computer systems to perform work." (Finley Aff., ¶ 7). Still another is oddly specific, designating as off-limits questions about "the speed at which the company's systems operate." (Finley Aff., ¶ 7). In any case, taken together and taken literally, these categories appear to encompass all but the most general information about the work NTC performs for its clients. However broad

8

Florida's definition of trade secrets is, surely that exceeds it. Indeed, Ms. Lance, in a deposition in a prior action, and Bryan Bly, an NTC employee who was deposed in this action, have both answered questions that revealed information included in one or more of these categories. (Deposition of Erika Lance dated June 2, 2010, attached as Exh. 2 to Notice of Filing of Corrected Exhibits dated April 21, 2017, at 8-12, 14-18, 22-23, 26-30; Deposition of Bryan Bly dated March 21, 2017 ("Bly Dep."), at 13-14, 18-19, 22-23).[5]

As it stands now, it has not been established conclusively that trade secrets or other confidential information will be elicited by plaintiffs' counsel. Nonetheless, I have no doubt that NTC does possess trade secrets that might be compromised, depending on the plaintiffs' questioning of Ms. Lance, should I order her to reappear for deposition. I will therefore evaluate whether the (hypothesized) trade secrets are reasonably necessary to the plaintiffs' case.

Ms. Lance argues that the information sought is relevant only to the plaintiffs' dismissed RICO claims from the Third Amended

---

[5] Like the transcript of Ms. Lance's April 21, 2017 deposition, the transcript of Mr. Bly's deposition has been designated "Confidential" and "Attorneys' Eyes Only" and is currently the object of a motion challenging those designations. Mortgage Resolution IV, 2017 WL 2172322, at *1. It, too, has been filed under seal in the main action.

Complaint and the potential RICO claims from the proposed Fourth Amended Complaint. (Lance Memo. at 19-23). She is incorrect. Information about the types of clients NTC services is appropriate background information about the company for which Ms. Lance works. And the plaintiffs have represented that the documents they asked about at the deposition are related to lien releases filed by NTC on loans the plaintiffs purchased from the defendants. Allegations about such releases are central to the contract and tort claims still at issue here. See Mortgage Resolution II, 2016 WL 3906712, at *1-2. Information elicited about these documents is therefore relevant. See, e.g., id. at *3 ("Relevance is . . . 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense." (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978))).

Ms. Lance insists that a showing of mere relevance is not sufficient. (Lance Memo. at 18). Cases do indicate that the entity seeking trade secrets must show that the "information is relevant and necessary to the action." I.S.E.L., 2009 WL 3367237, at *2. However, the required showing of "necessity" does not appear to be onerous. Rather, "[r]elevance [] is always the polestar." McDonald's Restaurants of Florida, Inc. v. Doe, 87 So. 3d 791, 793 (Fla. Dist. Ct. App. 2012). Thus, courts have ordered

10

trade secrets disclosed without making any explicit finding greater than relevance, see, e.g., Cruise Compete, LLC v. Smolinski & Associates, Inc., No. 12 MC 80796, 2013 WL 12131320, at *3 (S.D. Fla. Jan. 8, 2013) ("The Court concludes that [the plaintiff] has shown a reasonable necessity for the customer lists, as the information is directly relevant to the claims at issue . . . ."), or upon a showing that the information is both relevant and unlikely to be available from another source, see, e.g., EchoStar Satellite v. Viewtech, Inc., No. 10 MC 60069, 2010 WL 2822109, at *4-5 (S.D. Fla. July 16, 2010). Conversely, trade secrets have been protected from disclosure where they were sought as part of "a fishing expedition" in which the requesting party seeks "show pieces for trial." McDonald's Restaurants of Florida, 87 So. 3d at 794; see also Landsport, 2006 WL 4692567, at *2 (declining to order disclosure of trade secrets where defendants merely asserted it sought to learn about role of non-party in alleged tortious interference in defendants' business relations); Cytodyne Technologies, Inc. v. Biogenic Technologies, Inc., 216 F.R.D. 533, 536-37 (M.D. Fla. 2003) (protecting third-party's confidential information from disclosure where proponent's counsel "was unable to support a need to any of the requested information, other than to perhaps verify discovery received from Plaintiff").

Here, as the plaintiffs argued during Mr. Bly's deposition,

"It was the lien releases and various documents that were signed by Chase employees as well as NTC employees that caused harm to the plaintiffs." (Bly Dep. at 14). Thus, questions about the preparation of those documents "directly relate[] to the contract and tort claims" at issue and "directly relate[] to Chase hiring [NTC] for the purpose of sending out [those] particular releases and various documents." (Bly Dep. at 21). More specifically, NTC's processes for preparing and filing such documents, including its quality control, appear significant to the question of whether the defendants here caused the plaintiffs' alleged injury. Moreover, it is evident from NTC's submissions that such information is unlikely to be available from any source other than NTC employees themselves. (Finley Aff., ¶¶ 7-8; Lance Memo. at 16). I therefore find that the plaintiffs have shown a reasonable necessity for the information.

Finally, NTC's worries about disclosure are overblown. First, the plaintiffs here are not its competitors. See, e.g., Woolbright v. GEICO General Insurance, Co., No. 12 CV 21291, 2012 WL 12864931, at *8 (S.D. Fla. Nov. 16, 2012) ("[T]rade secret information can still be disclosed if the recipient if not a competitor with the party who guards the information." (citing EchoStar, 2010 WL 2822109, at *6-7)); see also Fla. Stat. § 90.506, law revision council note ("The issue of trade-secret privilege usually arises

12

when a litigant seeks to compel disclosure of secret information which is commercially valuable to his opponent."). Second, as NTC and Ms. Lance know, the protective order in place in this litigation will allow them to protect any truly confidential information from disclosure to entities other than the attorneys litigating this case. See Cruise Compete, 2013 WL 12131320, at *3 ("[I]ssuance of a protective order is an adequate means of protecting any privacy interest that may exist . . . ."); Woolbright, 2012 WL 12864931, at *8 ("Of course, a court has ample authority to enter protective orders to protect any misuse of this information as necessary."); EchoStar, 2010 WL 2822109, *6-7 (ordering disclosure of non-party's trade secrets where court limited use of documents to specific litigation underlying subpoena); see also Fla. Stat. § 90.506, law revision council note ("This section permits the judge to order disclosure in any manner designed to protect the secret."). The plaintiffs' need for the information outweighs the harm of disclosure. Ms. Lance shall reappear for deposition. The plaintiffs are cautioned, however, that their questioning should not progress too far afield from what they represent they seek in their motion papers: information about the types of clients NTC has and information related to certain forms that Ms. Lance herself signed, and which were included as an exhibit at her deposition.

2. <u>Sanctions</u>

The plaintiffs seeks sanctions, apparently under Rule 37(a)(5) of the Federal Rules of Civil Procedure, for Ms. Lance's "obstruct[ion]" of her original deposition. (Pl. Memo. at 18; Reply at 7-8). Under Rule 37(a)(5) of the Federal Rules of Civil Procedure, if a party's motion to compel is granted, the court "must . . . require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion." However, this sanction may not be ordered if the moving party "filed the motion before attempting in good faith to obtain the . . . discovery without court action" or if "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(i), (iii).

I will not impose sanctions here. Ms. Lance was justified in attempting to protect trade secrets or other confidential information belonging to NTC. Moreover, although I cannot say that plaintiffs' counsel failed to attempt in good faith to obtain the discovery without court intervention, their conduct left something to be desired. Although Brent Tantillo (who took the lead in questioning Ms. Lance) asserted at Ms. Lance's first invocation of privilege that he would call the Court to resolve the dispute (Lance Dep. at 11) -- a practice I encourage -- he inexplicably

14

chose not to. Instead, at the second invocation, he abruptly decided to "walk," at which point Mr. Tantillo's colleague threatened to "go for sanctions." (Lance Dep. at 21). There does not appear to have been any immediate attempt to resolve the dispute informally.[6] In these circumstances, imposition of sanctions on Ms. Lance would be unjust.

Conclusion

For the foregoing reasons, the plaintiffs' Motion to Compel Compliance with Subpoena of Third-Party Witness Erika Lance and for Sanctions (Docket no. 1 in 17 MC 166) is granted in part and denied in part as discussed above.[7]

---

[6] The plaintiffs appear to argue that, because Ms. Lance did not object or move to quash the subpoena directed to her, she waived the objections she has now raised. (Pl. Memo. at 14-15). I am aware of no precedent (and the plaintiffs have cited none) holding that a deponent appearing on her own behalf pursuant to a subpoena under Rule 45 of the Federal Rules of Civil Procedure waives any assertion of privilege to individual questions if she fails to move to quash that subpoena prior to the deposition. Indeed, such a rule seems to me exceedingly inefficient.

[7] In addition, the plaintiff shall file under seal in this Court hard copies of all documents filed under seal in the Middle District of Florida. This includes copies of the transcript of the depositions of Erika Lance and Bryan Bly dated March 21, 2017. The plaintiffs' motion to seal those transcripts (Docket no. 2 in 17 MC 166) is therefore granted.

SO ORDERED.

_____
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:   New York, New York
         July 16, 2017

Copies transmitted this date:

Brent S. Tantillo, Esq.
Mary Jane Fait, Esq.
Tantillo Law PLLC
1629 K Street, NW, Suite 300
Washington, DC 20006

Gary F. Eisenberg, Esq.
Perkins Coie LLP
30 Rockefeller Plaza, 22nd Floor
New York, NY 10112

Robert D. Wick, Esq.
Michael M. Maya, Esq.
Christian J. Pistilli, Esq.
Covington & Burling LLP
One City Center
850 10th St., NW
Washington, DC 20001

Michael C. Nicholson, Esq.
Covington & Burling LLP
620 Eighth Ave.
New York, NY 10018-1405

Glen A. Silverstein, Esq.
Daniel A. Johnson, Esq.
Leader & Berkon LLP
630 Third Avenue, 17th Floor
New York, NY 10017

William F. Jung, Esq.
Jung & Sisco, PA
Suite 3920
101 E. Kennedy Blvd.
Tampa, FL 33602